### *Western District*

### WESLEY F. WARNER
### and
### MYRTLE W. WARNER
### v.
### UNITED PUBLIC MARKETS, INC.
#### d/b/a United Star Market

42

*Present*: Garvey, P. J., Moore & Allen, JJ.

Case tried to *McCooey, J.* in the Second District Court of Southern Worcester. S.C. No. 147360. D.C. No. 6234.

Argued: November 3, 1964

Decided: November 30, 1964

*Garvey, P.J.* This action of tort and contract was transferred for trial by order of the Superior Court under G. L. (Ter. Ed.) c. 231, §102c. The plaintiff Myrtle W. Warner (Myrtle) in count 2 seeks to recover damages for injuries she alleges were caused by the defendant's breach of warranty, and in count

for negligence. Her husband, Wesley E. Warner, (Wesley) seeks recovery of consequential damages in count 1 for breach of warranty and in count 3 for negligence. The defendant pleaded a general denial, contributory negligence, assumption of risk and lack of notice of breach of warranty. After a trial the court found for the defendant on all counts. Claiming to be aggrieved by the denial of certain of their requests for rulings of law the plaintiffs requested this report.

A meagre summary of the evidence introduced at the trial is reported. It shows that a package of *lamb patties,* in a cardboard tray covered with celophane, was purchased at the defendant's store several days prior to September 9, 1961. On this date Myrtle removed the patties from the tray, fried them in a pan and served them as part of the family noon meal.

When Myrtle took her first bite of the meal—a piece of a patty—she fractured a tooth on an object in the patty "the size of a split pea, flat on one side and convex on the other" and white in color. Wesley heard a crunching noise, saw the expression of pain on his wife's face and saw her remove a small BB sized pellet like white object from her mouth.

A dentist who testified at the trial, was not asked "whether biting into a piece of bone, embedded in a lamb patty, could be the proximate cause of a fractured tooth". [1]

[■■] The trial judge did not make separate findings of fact. He chose the unorthodox method of commenting, sometimes at length, following his denial or allowance of the plaintiffs' requests for rulings of law. We treat his comments as findings and rulings.

While our decision rests on the judge's findings and rulings on only two requests, we feel it necessary, for purposes of clarity, to comment on his action in respect to some of the others.

He allowed requests that there was sufficient evidence to warrant findings that the defendant was a merchant with respect to the lamb patties; the lamb patties purchased by the plaintiffs were not merchantable when sold; the injuries and damages sustained by the plaintiff[2] resulted from a breach by the defendant of its implied warranty of fitness; due notice of the alleged breach was given the defendant; the lamb patties were unwholesome and unfit for human consumption; the defendant was the manufacturer of the lamb patties; and they were not removed from the package until the day they were cooked and served. In allowing each of these reqeusts the trial judge added "noting that there was

---

[1] The ingredients of the lamb patties are not described in the reported evidence. The trial judge found, as shall appear, that the object Myrtle bit into, however described, was a foreign substance. We treat it as such. But compare this finding with the recent holding in *Webster v. Blue Ship Tea Room*, 347 Mass. 421, that bones in fish chowder are not, in New England, foreign substances.

some such evidence, the credibility of which was an issue to be resolved by the court".

At this posture of the case, if the evidence were believed, Myrtle had made a *prima facie* case of liability on both of her counts. The trial judge gave no indication that these issues were resolved against her. Had he done so, it would not have been necessary for him to consider, as he did, the issue of damages, and the plaintiffs could not now be heard to complain. And if nothing more appeared in the report, we would be constrained to hold that his general finding for the defendant "imports the finding of subsidiary facts and the drawing of all rational inferences essential to that conclusion". *Kennedy Bros., Inc. v. Bird,* 287 Mass. 477, 484.

But the judge went on to consider the last two requests of the plaintiffs. Request numbered 16 directed the judge's attention to measure of damages in Wesley's counts for consequential damages. In acting on his request he said:

> "*Denied* because the plaintiff failed to present one scintilla of evidence through Dr. Noroian, the plaintiff's dentist, or through anyone else so qualified, that the presence of a piece of bone —which was described by the male plaintiff as 'being about the size of a BB pellet and white in color' and which was also described by the female plaintiff as being 'about the size of a split pea, flat on one side and convex on the other and being white in color', was a proximate cause, adequately, substantially, and potentially efficient

to warrant a finding that civil liability attached thereto."

Request numbered 17, containing six subsections, directed his attention to the measure of damages on Myrtle's counts. The judge, in denying this request, said:

"(a) (b) (c) (d) (e) and (f) are all denied because of the plaintiff's failure to sustain its (sic) burden of presenting evidence of a causal relation or contributory connection between the chewing of the lamb patty, and any physical injury suffered by her, particularly on the evidence of her own dentist, Dr. Noroian, who admitted that she had twelve (12) teeth missing prior to the subject incident on September 9, 1961, and especially on said dentist's testimony that said subject tooth had become weakened because it had been repaired by him three times in two places—that is, cavities filled—and that said tooth also had been filled at least once prior to the plaintiff lady ever becoming his patient, that is, at some date prior to September 14, 1959—the first time said plaintiff lady became his patient— and particularly, on the basis of the aforesaid plaintiff's dentist's admission or concession that 'every time cavities in a tooth are filled, it weakens the tooth even more,' the court specifically finds that the plaintiffs have failed to establish by a fair preponderance of the credible evidence, fully

---

[2] There are two plaintiffs in this case, but throughout the report reference is made to "the plaintiff" without designation. We, as did the trial judge, consider the seller's warranty as to merchantibility and fitness extended to Myrtle either as purchaser, or under G. L. c. 106, §2-318, as one of "the family or household of (the) buyer".

evaluated in its entirety, neither liability nor damage, particularly the damages so detailed and extensive, as the female plaintiff seeks under request #17, *in the total absence of any duly qualified evidence of causal relationship.*" (Emphasis supplied)

By these two findings and rulings it appears that the trial judge felt, rather strongly, that the testimony as to the extent of Myrtle's injuries was grossly exaggerated, and the failure to elicit from the dentist an opinion that biting into a bone could cause the injury complained of was fatal to the right of the plaintiffs to recover. This seems to have entrapped him, because he explicitly rested his ultimate finding as to liability on the testimony of the dentist who treated Myrtle. Put another way, he ruled, as shown by the emphasized conclusion in his findings and rulings on request numbered 17, that one in course of eating a meal, biting into an unexpected foreign substance in food, requires the testimony of an expert to prove that such an incident could probably result in the eater fracturing a tooth. This is error because such a result is within the ordinary experience and common knowledge of men, and the testimony of an expert is not needed to prove it.

"As a part of their cases, the plaintiffs were bound to show that unwholesome food sold by the defendant was the probable cause of their illnesses, but they were not obliged to exclude every other possible cause. It it true that there was no medical testimony that the

illnesses were caused by eating the sausage meat, but the absence of such testimony, in and of itself, would not prevent findings for the plaintiffs." *Flynn v. Growers Outlet, Inc.,* 307 Mass. 373, 376. In *Lovely's Case,* 336 Mass. 512, 515, the court held that medical testimony was not necessary to permit a lay member of the Industrial Accident Board to infer a causal relationship between an incident and a resulting hernia.

Expert testimony as to causation is not necessary and is not admissible if the subject of inquiry may be presumed to be within the ordinary experience of knowledge of men, *Young v. Caplan,* 267 Mass. 152; *McMenimon v. Snow,* 219 Mass. 231; *Boisvert v. Ward,* 199 Mass. 594; *Meehan v. Holyoke St. RR.,* 186 Mass. 511.

Whether Wesley was a party to the purchase of the lamb patties does not appear in the report. If he was not, he cannot recover consequential damages resulting from personal injuries, sustained by his wife, on the ground of breach of warranty. *Pearl v. Wm. Filene & Sons Co.,* 317 Mass. 529, 530-531. See G. L. c. 106, §2-318.

*A new trial is to be ordered.*

Jacob Oppewal, of Whitinsville, for the Plaintiff.

Warren Delaney, of Boston, for the Defendant.